UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ciara T. C.,                                            No. 23-cv-2999 (DLM)

          Plaintiff,

v.                                                      **ORDER**

Leland Dudek,
 Acting Commissioner of Social Security,

          Defendant.

---

Plaintiff Ciara T. C. seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). *See* 42 U.S.C. § 405(g). This matter is before the Court on the parties' briefs seeking judgment on the administrative record. (Docs. 20 (Plaintiff's motion for summary judgment), 21 (memorandum in support), 24 (Commissioner's brief), 30 (Plaintiff's reply brief).) Both parties have voluntarily consented to the undersigned magistrate judge's review of this matter. For the reasons below, the Court affirms judgment in favor of the Commissioner.

## BACKGROUND

On October 6, 2021, Plaintiff filed her application for DIB, alleging she had been disabled since December 4, 2020. (Tr.[1] at 220-26.) The Social Security Administration ("SSA") denied her claim initially (Tr. at 122-26) and upon reconsideration (133-37). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 143, 162.) The ALJ held a hearing on February 15, 2023. (Tr. at 35-78.) Counsel represented Plaintiff at the hearing, (Tr. at 38), and Plaintiff testified on her own behalf (Tr. at 41-64). A vocational expert also testified at the hearing, answering questions of both the ALJ and Plaintiff's lawyer. (Tr. at 64-76.)

On February 28, 2023, the SSA sent Plaintiff notice of an unfavorable decision. (Tr. at 8-10 (notice), 11-28 (decision).) The ALJ found that Plaintiff had a number of severe impairments, including degenerative disc disease, ankylosing spondylitis,[2] depression, anxiety, and post-traumatic stress disorder. (Tr. at 13-14.) The ALJ also noted that there were "allegations of carpal tunnel syndrome and fibromyalgia," but "insufficient evidence to establish that these impairments result in more than minimal work-related limitation of function." (Tr at 13.)

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on January 23, 2024. (Docs. 13 to 13-7.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the document rather than the exhibit number.

[2] Ankylosing spondylitis is "a type of arthritis that causes inflammation in the joints and ligaments of the spine." *See* National Institute of Arthritis and Musculoskeletal and Skin Diseases, *Ankylosing Spondylitis*, https://perma.cc/6ATC-G6WJ (last visited March 24, 2025). Its symptoms include low back and hip pain that may progress to other areas of the body. *See id.*

Despite Plaintiff's mental and physical impairments, the ALJ found she was not disabled. (Tr. at 22.) In doing so, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC")[3] to perform light work[4] with the following additional limitations: only occasionally climb ramps, stairs, and ladders; no climbing of ropes or scaffolds; occasionally stoop, kneel, crouch, and crawl; occasional exposure to vibrations; limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process day to day, and jobs with multistep tasks that are easily resumed after momentary distraction. (Tr. at 15.) The ALJ further limited Plaintiff's RFC to jobs that do not require work-related interaction with the public and no more than occasional work-related interaction with coworkers and supervisors. (*Id.*) The ALJ credited the testimony of the vocational expert that with these limitations, Plaintiff could still perform jobs in the national economy, including as a Marker (Dictionary of Occupational Titles ("DOT") No. 209.587-034), Routing Clerk (DOT No. 222.687-022), Mail Clerk (DOT No. 209.687-026), Preparer (DOT No. 249.587-018), Touch-Up

---

[3] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

Screener/Printed Circuit Board Assembler (DOT No. 726.684-110), and Film Touch-Up Inspector (DOT No. 726.684-050).[5]

Plaintiff appealed the ALJ's decision to the SSA's Appeals Council, but the Appeals Council denied her request for review on August 8, 2023 (Tr. at 1-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff then filed this lawsuit seeking judicial review of the SSA's decision.

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 404.1520(a)(4) for evaluating DIB claims.[6] Rather, she asserts that the ALJ committed five reversible errors: (1) the ALJ did not properly evaluate the opinion of Dr. Kathryn Lombardo, a treating psychiatrist; (2) the ALJ did not address Plaintiff's Chronic Pain Syndrome; (3) the ALJ improperly discounted Plaintiff's testimony; (4) the ALJ's determination about which jobs Plaintiff could perform was not supported by

---

[5] The final three representative occupations identified by the vocational expert involve sedentary work. By definition, sedentary work "involves lifting no more than 10 points at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[6] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* § 404.1520(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v).

substantial evidence; and (5) it was error to rely on the vocational expert's testimony because the expert's conclusions were based on an incomplete recitation of Plaintiff's impairments and limitations.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to decide whether it contains sufficient evidence to support (or detract from, as the case may be) the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). If substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ uses the wrong legal standard or incorrectly applies the law, those may be reversible legal errors. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

I.   **THE ALJ'S EVALUATION OF DR. LOMBARDO'S OPINION DOES NOT REFLECT LEGAL ERROR, AND HIS CONCLUSIONS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Plaintiff's first challenge is to the ALJ's treatment of the opinion of Dr. Lombardo, Plaintiff's treating psychiatrist. In Dr. Lombardo's December 22, 2022 Mental Medical Source Statement she considered Plaintiff's mental abilities and functioning in 20 different areas, assessing them as on a scale of "None," "Mild," "Moderate," "Marked," or "Extreme." (Tr at 1706-08.) Dr. Lombardo assessed Plaintiff to have "Extreme" limitations in 18 of the 20 categories; "Marked" limitations in 1 category, and "Moderate" limitations in 1 category. (*Id.*) Dr. Lombardo opined that because of Plaintiff's "symptoms of depression and anxiety, I would predict that the patient could not work on a regular sustained basis of 40 hours per week." (Tr. at 1705.) She further indicated that these limitations were likely to span over a 12 continuous month period, and that Plaintiff would have to be absent from work at least 4 days per month. (Tr. at 1708.)

The ALJ assessed Dr. Lombardo's opinion as not persuasive because it did not cite supportive medical records, and because it conflicted with some of Plaintiff's other medical records. Plaintiff objects to the ALJ's treatment of Dr. Lombardo's opinion evidence. It is not entirely clear if Plaintiff directs her attack on the evaluative process used by the ALJ, or on the evidence relied upon for the ALJ's conclusions with respect to Dr. Lombardo's opinion. For the sake of completeness, the Court addresses both concerns.

A.   **The ALJ used the proper framework for assessing Dr. Lombardo's opinion.**

Under 20 C.F.R. § 404.1520c, an ALJ must consider several factors when allocating persuasive value to opinion evidence, with the factors of supportability and consistency

6

deemed the most important. 20 C.F.R. § 404.1520c(a), (b)(2); *see also Violet G. v. Kijakazi*, No. 21-cv-2105 (TNL), 2023 WL 2696594, at *6 (D. Minn. Mar. 29, 2023) (collecting cases concluding that an ALJ's failure to address and explain supportability and/or consistency warranted remand). In other words, an ALJ's allocation of persuasive value will be considered legally sufficient upon court review for legal error where they explain supportability and consistency in their decision. While "supportability" and "consistency" are terms of art, the regulations indicate that, as used in this context, the words mirror their everyday meaning: supportability means that an opinion will be considered more persuasive the more it is supported by objective medical evidence; consistency means that an opinion will be more persuasive if it is consistent with the other medical and nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. § 404.1520c(c)(1), (2). Provided that the ALJ's reasoning is sound and supported, they may "accept some, but not all, of a medical opinion." *Austin*, 52 F.4th at 729. But at the very least, the regulations require that the ALJ explain how they considered the supportability and consistency factors in evaluating a medical opinion. 20 C.F.R. § 404.1520c(b)(2); *Michael B.*, 2022 WL 4463901, at *2 (failure to articulate supportability analysis is a legal error that requires remand); *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (failure to articulate consistency with the record is a legal error that requires remand). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Diane M. W.*, No. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Sept. 22, 2022) (citing *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *8

(D.S.D. July 14, 2022); *Goss v. Kijakazi*, No. 4:21-cv-0663 (LPR/JJV), 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)).

Here, the ALJ committed no error. The ALJ specifically noted that in opining that Plaintiff had no ability to work full time on a sustained basis, Dr. Lombardo "fail[ed] to cite to any medical records (such as objective observations or psychiatric test results) which support her opinions." (Tr. at 20.) This is a supportability determination. The ALJ continued, Dr. Lombardo's "opinions are also inconsistent with certain areas of the medical records," such as a recent prognosis report by Plaintiff's treating psychologist, Amanda Ward, PsyD, LP, who indicated there was "a reasonable expectation of improvement in patient's condition and functioning with active participation and compliance with recommended treatment course." (*Id.* (quoting Tr. at 1643).) The ALJ also made clear that, at least with respect to consistency, his citation to specific contrary evidence was exemplary but not isolated.

Finding the ALJ employed the appropriate framework for evaluating the medical opinion of Dr. Lombardo, the Court now turns to the question of whether the ALJ's conclusion that Dr. Lombardo's opinion was unpersuasive is supported by substantial evidence.

**B.   Substantial evidence supports the ALJ's conclusions regarding the persuasiveness of Dr. Lombardo's opinion.**

This Court reviews a challenge to the evidentiary basis of an ALJ's conclusions under the so-called "substantial evidence" standard. Substantial evidence is a different standard of review from claims of legal error. Under a substantial evidence standard, courts

ask whether a reasonable mind could reach the same conclusion as the ALJ on the same evidence, even if other reasonable conclusions could also be reached. *See Biestek*, 139 S. Ct. at 1154. If the answer is yes, courts affirm an ALJ's conclusions. *See Nash*, 907 F.3d at 1089.

Here, the ALJ appropriately laid out the critical components of Dr. Lombardo's Source Statement, and (as set out above) followed the appropriate framework for evaluating the persuasive value of Dr. Lombardo's opinion. It is true, as Plaintiff asserts, that the portion of the ALJ's decision which analyzes Dr. Lombardo's work does not contain a detailed recitation of all contrary and inconsistent evidence. But in the pages preceding, the ALJ detailed significant record evidence that supports the notion Plaintiff was not as limited as Dr. Lombardo opined. (Tr. at 18-19.) For instance, the treatment notes for Plaintiff's October 16, 2021 visit to her treating psychiatrist indicate she was alert and cooperative; coherent and goal-directed; and had normal thought content, as well as good judgment. (Tr. at 473.) Plaintiff's psychotherapy progress notes, also from the period for which Plaintiff was claiming disability, regularly describe her appearance, dress, thought content, and behavior as appropriate; her insight and attention as good or excellent; her perception and flow of thought as unremarkable; her memory as intact, her judgment as fair or excellent; her affect as appropriate or congruent (although tearful during some sessions); and her mood as sometimes anxious but sometimes euthymic (that is, stable). (*See, e.g.*, Tr. at 422, 425, 429, 431, 433, 435, 437, 439, 441.) Other psychiatric progress notes from the period for which Plaintiff was claiming disability refer to her as well-groomed, fully alert and oriented, clear, logical, and with good insight, if also anxious and

9

depressed. (Tr. at 553.) And still other notes spanning the relevant period—including before and after the date of Dr. Lombardo's assessment—characterized Plaintiff as someone with intact insight and judgment, organized thought process, and appropriate attention, if also presenting as depressed and tearful. (*See, e.g.*, Tr. at 638, 641, 729, 1417, 1423, 1428, 1461, 1711-12, 1726.)

Contrasted against this evidence is Dr. Lombardo's Medical Source Statement, in which she opined that Plaintiff would have "Extreme"[7] limitations in things like being able to remember locations; carrying out short and simple instructions; concentrating for 2 hours or more; being on time and using a schedule; having an ordinary routine; making simple work-related decisions; interacting appropriately, asking simple questions or for help; accepting instructions; and getting along with peers in a normative way. (Tr. at 1706-08.) Given the considerable record evidence from Plaintiff's providers that, despite her mental health challenges, she was clear-headed, appropriate, and demonstrated good judgment, it was not error for the ALJ to find Dr. Lombardo's contrary opinions unsupported, inconsistent, and ultimately unpersuasive. The ALJ may have rightly been within his discretion to credit Dr. Lombardo's decision, but coming out the other way was a decision supported by substantial record evidence, too. A court's job on review is not to redo the ALJ's medical-source evaluation, but to determine whether the decision which the ALJ made has sufficient support. Here, it does.

---

[7] "Extreme" limitations were defined in the Source Statement as those which "impair the effective performance of the [work] task incrementally for a total of more than 30% of an 8-hour workday or 40 hour workweek." (Tr. at 1706.)

## II. THE ALJ PROPERLY CONSIDERED PLAINTIFF'S CHRONIC PAIN SYNDROME SYMPTOMS IN HER RFC.

Plaintiff next asserts that the ALJ committed reversible error by not finding her Chronic Pain Syndrome to be a "severe" impairment at Step Two of the sequential evaluation process. The Commissioner responds that making such an explicit determination about Chronic Pain Syndrome was not necessary because it was related to other impairments, such as Plaintiff's spinal degeneration and ankylosing spondylitis, which the ALJ did classify as severe. And, according to the Commissioner, the RFC crafted by the ALJ adequately took into account the limitations caused by Plaintiff's Chronic Pain Syndrome, even though not explicitly discussed at Step Two.

Plaintiff is correct that there is some evidence that she suffers from Chronic Pain Syndrome. (*See, e.g.*, Doc. 21 at 17-18 (Plaintiff's citation of Chronic Pain Syndrome records[8]).) Her records, however, seldom identify Chronic Pain Syndrome as a standalone ailment, but rather reference it in connection with Plaintiff's back and spinal ailments. (*See, e.g.*, Tr. at 403 (diagnosis of Chronic Pain Syndrome secondary to degenerative arthritis of the spine), 664 (same), 477 ("chronic pain due [to] spinal injuries and degenerative disease"), 480 (same), 1286 (chronic pain described as neck, low back, and shoulder pain

---

[8] Many of Plaintiff's pin citations to the record are inaccurate, although the records are found elsewhere in the record. For instance, Plaintiff cites to a March 30, 2018 psychological evaluation at Transcript page 984, but that page includes information about lab results, not a psychological evaluation. The psychological evaluation Plaintiff refers to in her brief is found on Transcript pages 860, 1523, and 1617. Likewise, Plaintiff cites to a November 25, 2019 office visit where Chronic Pain Syndrome was listed as the primary diagnosis at Transcript page 1609, but that office visit is actually detailed at Transcript page 979.

11

related to cervical and lumbar spine), 860 (Chronic Pain Syndrome secondary to myofascial neck and upper back pain), 979 (Chronic Pain Syndrome secondary to cervical neck pain).) Meanwhile, medical records from Plaintiff's visits to the Spine and Sports Medical Group for her back and neck pain make no diagnosis of Chronic Pain Syndrome, even though a person would reasonably expect such a diagnosis given other evaluators' linking of that disorder to Plaintiff's back and neck ailments. (*See, e.g.*, Tr. at 484-501, 504-08, 511-25.)

Given this mixed record, the Court cannot fault the ALJ for failing to deem Plaintiff's Chronic Pain Syndrome a "severe" impairment at Step Two of the evaluative process. At Step Three, the ALJ addresses the severity of Plaintiff's "back condition" and "musculoskeletal functioning," but it is not clear whether the reference is to Plaintiff's degenerative disc disease, ankylosing spondylitis, Chronic Pain Syndrome, or combination of them. (Tr. at 13-14.) Because Plaintiff's Chronic Pain Syndrome was (according to substantial record evidence) closely linked to her other back problems—including her degenerative disc disease and ankylosing spondylitis—the Court would be hard pressed to find any error in the ALJ's failure to uncouple each and every ailment for separate treatment at Steps Two and Three. *Accord Porter v. Kijakazi*, 22-3270, 2023 WL 3637884, at *1 (8th Cir. May 25, 2023) (per curiam) ("We find no reversible error in the ALJ's failure to include chronic pain syndrome among Porter's severe impairments, as this condition was closely related to the spinal and mental impairments the ALJ found severe.").

Additionally, the prevailing view in this district is that any alleged Step Two error is harmless if the ALJ properly considered the functional effects of a person's ailments in

crafting an RFC. *Rosalind J. G. v. Berryhill*, 18-cv-82 (TNL), 2019 WL 1386734, at *20 (D. Minn. Mar. 27, 2019). After all, the ultimate question in a disability claim review concerns a person's functional limitations based on their symptoms, not their diagnoses. *Accord Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). "The mere presence of a condition such as . . . Chronic Pain Syndrome is not the dispositive issue in a disability evaluation; rather, the ALJ must consider the Plaintiff's actual and specific functional limitations resulting from the condition." *Steve N. v. Kijakazi*, 21-cv-2312 (DJF), 2023 WL 1971749, at *10 (D. Minn. Feb. 13, 2023), *aff'd sub nom. Nicoski v. Kijakazi*, No. 23-1808, 2023 WL 5970396 (8th Cir. Sept. 14, 2023) (per curiam). And even where an ALJ's analysis has some oversights, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Grindley*, 9 F.4th at 629 (quotations omitted).

Here, the ALJ did consider the effects of Plaintiff's Chronic Pain Syndrome in crafting the RFC. First, the ALJ indicated that Plaintiff's "reported symptoms of pain, fatigue, and limited motion are consistent with the objective and other evidence to the extent that she cannot perform more than light work." (Tr. at 16.) In addition, the ALJ included significant postural and functional limitations to Plaintiff's RFC "[d]ue to back and joint pain." (*Id.*) Those limitations are supported by substantial evidence. While Plaintiff may protest that her Chronic Pain Syndrome was not specifically mentioned, it seems clear the ALJ considered, and imposed, limitations based on that ailment in the RFC. *Accord Steve N.*, 2023 WL 1971749, at *10.

Reasonable minds would accept the ALJ's conclusion that Plaintiff retained the ability to perform light work with the postural and environmental limitations provided for in the RFC. Plaintiff's fatigue and pain, which she attributes to her Chronic Pain Syndrome, were considered in fashioning her RFC. This is clear both because several of Plaintiff's other ailments included overlap of such symptoms, and because the ALJ identified back and joint pain as limiting factors in crafting the RFC.

### III.   THE ALJ PROPERLY EVALUATED PLAINTIFF'S TESTIMONY.

Plaintiff next asserts the ALJ committed error in evaluating and ultimately discounting Plaintiff's testimony about her symptoms and limitations. An ALJ must consider a Plaintiff's subjective claims of limiting symptoms according to factors sometimes referred to as the "*Polaski* factors." *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (requiring ALJ to consider (1) the plaintiff's daily activities; (2) the duration, frequency, and intensity of the plaintiff's pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the plaintiff's functional restrictions). This aligns with the requirements set forth by the SSA in SSR 16-3p. *See* SSR 16-3p, 2017 WL 5180304, at *7–8 (S.S.A. Oct. 25, 2017) (discussing the factors an ALJ must use to evaluate the intensity, persistence, and limiting effects of an individual's symptoms).

In her principal and reply briefs, Plaintiff highlighted many of the challenges she identified during her hearing: she does not like or tolerate most medications; she sometimes gets so depressed she cannot complete basic hygiene tasks; she has panic attacks and significant social anxiety; and chores take her a long time to complete. (Docs. 21 at 26; 30

14

at 6; *see also* Tr. at 47-62.) The ALJ considered this testimony, but found that Plaintiff's statements about "the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 16.) Specifically, the ALJ noted that despite claiming disabling physical conditions related to her degenerative disc disease and ankylosing spondylitis, Plaintiff had not been recommended for surgery; had no disc herniation or stenosis; and had examinations that did not show severe loss of range of motion or significant neurological deficits. (Tr. at 16-17.) The ALJ also noted that Plaintiff had not been referred to a pain clinic or recommended to use a TENS unit, and that there were no signs of muscle atrophy or unusual weight loss in the record. (Tr. at 17.) In addition, the ALJ considered Plaintiff's daily activities, which included fixing meals, doing housework (albeit slowly and with breaks), walking her dog, shopping, and socializing. (*Id.*) With respect to Plaintiff's mental health, the ALJ appreciated that Plaintiff suffered from depression, anxiety, and PTSD. (*Id.*) As for her testimony regarding the limitations stemming from these impairments, however, the ALJ noted the absence of hospitalizations; Plaintiff's strong educational background; a work history showing no difficulties in sustaining basic tasks; and a record that did not show any "significant deterioration in cognitive functioning" since Plaintiff left the workforce in December of 2020. (Tr. at 17-18.) The ALJ also considered that Plaintiff presented as cooperative and appropriate, can pay bills, handle finances, take care of her own medical needs, and has no temper control problems. (Tr. at 18-19.)

Plaintiff criticizes the ALJ for conducting what she suggests was a superficial evaluation of her testimony, where a more searching review would have revealed things

15

like: her conservative spinal treatment was based on medication tolerance issues and not malingering; the lack of spinal surgery was because her symptoms were not localized (precluding surgery); and presenting as "normal" during a doctor's appointment is not a fair measure of whether a person can work full-time. This is an invitation to conduct a fresh-eyes evaluation of Plaintiff's testimony, but that is not the Court's role for such a challenge. Where, as here, the ALJ relies on substantial evidence to assess a person's subjective complaints, "contentions that the ALJ should have weighed these facts differently or drawn different conclusions do not warrant relief under our deferential standard of review." *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016). The ALJ's evaluation comported with SSR 16-3p and was supported by substantial evidence, leaving no room for reversal on this basis.

### IV. THE ALJ'S STEP FIVE FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

At Step Five of the sequential process, the SSA considers whether a disability claimant can perform work, given their age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). Here, it is undisputed that Plaintiff cannot perform her past relevant work, so it is the Commissioner's burden to show that there are jobs available to her in the national economy, given her personal characteristics and limitations. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). This Court reviews the ALJ's determination under the substantial evidence standard. *Martise*, 641 F.3d at 927.

At Plaintiff's hearing, the ALJ asked the vocational expert to opine on available jobs given the RFC crafted for Plaintiff. (Tr. at 67.) The vocational expert testified that Plaintiff

could still perform at least three "light work" representative jobs, including as a Marker (DOT No. 209.587-034), Routing Clerk (DOT No. 222.687-022), and Mail Clerk (DOT No. 209.687-026). (*Id.*) The ALJ then reduced the hypothetical exertional level to "sedentary work."[9] Again, the vocational expert identified three representative jobs: Preparer (DOT No. 249.587-018), Touch-Up Screener/Printed Circuit Board Assembler (DOT No. 726.684-110), and Film Touch-Up Inspector (DOT No. 726.684-050). (Tr. at 68.) The vocational expert noted that the fifth digit of all representative jobs (the "people code") was 8, "which indicates that there is not public-facing activity and also brief and superficial interaction with coworkers and supervisors." (Tr. at 70.) The vocational expert also noted that certain issues such as productivity and absenteeism are not discussed in the DOT, but relied on her education and experience to determine job qualifications for such issues. (*Id.*)

On review, Plaintiff attacks the vocational expert's testimony because sources *other than* the DOT, such as Bureau of Labor statistics and "Job Browser Pro" software, suggest the representative jobs might have a higher level of social interaction than the vocational expert opined. (Doc. 21 at 28-32.) This is the type of attack on witness credibility that is not consistent with a court's "substantial evidence" review—particularly when such issues

---

[9] As previously noted, sedentary work "involves lifting no more than 10 points at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

17

were not raised at the actual hearing where the vocational expert testified.[10] The vocational expert testified that she relied primarily on the DOT, but also drew upon her education, her experience, and the sources identified by Plaintiff to "fine tune" her conclusions. (Tr. 70-74.) It was not error for the ALJ to find her testimony credible, and her conclusions reflect substantial evidence in support of the ALJ's finding that Plaintiff could perform work in the national economy.

## V. THE ALJ'S HYPOTHETICAL QUESTIONS TO THE VOCATIONAL EXPERT WERE PROPER.

Finally, Plaintiff asserts that because the ALJ "improperly determined" her RFC, the hypothetical questions which the ALJ posed to the vocational expert based on that RFC were incomplete and improper. Plaintiff does not assert any independent basis for claiming the RFC was incomplete, beyond those challenges identified above.

"A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010) (citing *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005)). As discussed above, that was the case here. The hypothetical posed to the vocational expert was based on an appropriately tailored RFC, and it was not error for the ALJ to rely on the expert's responsive testimony.[11]

---

[10] Plaintiff's counsel before this Court represented her at the hearing before the ALJ.

[11] It is worth noting that while the ALJ determined that Plaintiff's RFC was generally consistent with light work, at least one hypothetical question to the vocational expert reduced the exertional level to sedentary work. (Tr. at 68.) The vocational expert identified plentiful jobs in the national economy for both questions. (*Id.*)

**ORDER**

Based on the above findings, as well as the files, records, and proceedings above,

**IT IS ORDERED** that:

1. Plaintiff's request for reversal (Doc. 20) is **DENIED**; and

2. The Commissioner's request for affirmance (Doc. 24) is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   March 25, 2025                       _s/Douglas L. Micko_____
                                                                    DOUGLAS L. MICKO
                                                                    United States Magistrate Judge